UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD REECE,

       Plaintiff,

vs.

Case No.: 05-CV-70177-DT

HON. ROBERT H. CLELAND
MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant,
_____/

## REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II.   REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff signed his application for DIB on January 3, 1997, alleging that he has been disabled and unable to work since July 11, 1996, due to "rotor cup rip; no strength in left shoulder [and] leg brace on left leg." (TR 74-75, 91-94, 108). Benefits were denied initially on April 8, 1997, and again upon reconsideration on May 22, 1997. (TR 77-79, 82-84). A de novo hearing was held on February 17, 1998, before Administrative Law Judge [ALJ] John A. LaFalce. (TR 37-73). In a decision dated February 26, 1998, ALJ

LaFalce found that Plaintiff could perform a limited range of sedentary and light unskilled work. (TR 17-26). Accordingly, Plaintiff was found not disabled. The Appeals Council denied a request to review the decision on August 20, 1999. (TR 6-7).

Plaintiff appealed to the district court and ALJ LaFalce's decision was reversed and remanded. (TR 335-36). The Appeals Council remanded the case to ALJ John A. Ransom on April 19, 2000. (TR 335-36). Another hearing was conducted by ALJ Ransom on February 15, 2001. (TR 408-29). In a decision dated May 24, 2001, ALJ Ransom found that Plaintiff could perform a limited range of sedentary work. (TR 318-29). ALJ Ransom's decision became the Commissioner's final decision when the Appeals Council denied review on December 7, 2004. (TR 298-300). The Plaintiff has commenced this action for judicial review.

### A.    PLAINTIFF'S TESTIMONY

#### 1.    February 17, 1998, Hearing[1]

Plaintiff testified that he was born on October 24, 1953, and was forty-four at the time of this initial hearing. (TR 40). He stated that he lived in a house in Saginaw, Michigan, with his wife and four sons. Id. He testified that he is six foot, one or two inches tall, and weighs one hundred and ninety-five pounds. (TR 41). He indicated that he drove himself to the hearing, but had not taken any trips in the past two years. Id.

Plaintiff testified that when he became frustrated and depressed, he started treating with Dr. Nagarkar and Bob Thrash, a counselor. (TR 55-56). Plaintiff testified that he had been seeing both of them once a month for the past two years. (TR 56, 62). He stated that he discusses with both Dr.

---

[1]Only portions of Plaintiff's February 17, 1998, testimony relevant to the issues appeal here are discussed. (TR 37-73). A vocational expert [VE] also testified at this hearing, however, Plaintiff does not challenge same.

Nagarkar and Robert W. Thrash how he is doing and how he is "faring with the pain." (TR 62). He stated things were "bad," and he had "breakdowns," but that Dr. Nagarkar and Mr. Thrash were "good." (TR 56). Plaintiff indicated that he had not had any surgeries on his wrists, back, left shoulder, or left knee yet because he was told to "get [his] mind right" first. (TR 57). He testified that he was taking Daypro and Serzone for his pain and depression. (TR 58). He stated that he did not know if he suffered from any side-effects. Id.

### 2. February 17, 2001, Hearing

Plaintiff testified that he had not worked since the last hearing. (TR 423). He stated that his only income was $484.00 per week in worker's compensation and $1,922.00 per month from a pension. Id. He stated that his wife is not employed. Id. He stated that he lives at home with his wife and three children. (TR 424). He stated that he graduated from high school. Id.

Plaintiff testified that he had surgery on both his wrists, on his right thumb, and his right elbow. (TR 412-13). He explained that this included three separate surgeries, with the thumb and wrist being completed on the same day. (TR 413). He stated that after the surgery the thumb is still numb, but better than it was. Id. He stated that he still has a problem gripping and grabbing, but the gripping is better than it was before the surgery. Id. Further, he noted that the weather does not "agree" with him. Id. He stated that he is "not able to hold or grip." Id.

Plaintiff testified that he has chronic pain. (TR 413-14). He stated that he has numbness and tingling to which he has become accustomed. (TR 413). However, he indicated that he "dances" at night due to numbness while he is sleeping. (TR 414). He explained that by "dancing" he means he has to rotate positions constantly. Id. He stated that if he gets two hours of sleep then he considers it "good." Id. He testified that he takes Seroquel and Effexor as prescribed by Dr.

3

Nagarkar to help him sleep and they have to keep changing his medications because his body does not accept the medicine. (TR 414-15).

Plaintiff testified that he has a "shadow." (TR 415). He explained that it chases him and "tells [him] that [he is] not productive . . . useless [and] worthless." (TR 415-16). Sometimes Plaintiff finds himself in strange places, as he explained that he was naked in his back yard in the winter. (TR 416). He stated that his medications do not work, but his wife supports and takes care of him. (TR 416-17). He explained that he fights the shadow whether or not he takes his medication. (TR 416).

Plaintiff testified that he used to have guns in his house, but no longer does because of the "shadow." (TR 416-17). He stated that he is putting two children through college and another three more. (TR 416). He stated that his kids are "very good" and maintain very good grades. (TR 417). He indicated that all his money goes to them because they are his priority. Id.

Plaintiff indicated that since the last hearing, he is very private and does not associate with other people. (TR 418). He stated that this has changed from when he hurt himself. Id. He stated that he no longer runs or works out like he used to. (TR 419). He stated that he no longer reads either, because of his "dark side within the dark side." Id. He indicated that his focus is on his family and their education and happiness. Id. He stated that he used to be a leader in the Masons, but no longer participates in same. (TR 420).

Plaintiff testified regarding his typical day. (TR 420-22). He stated that he gets up with his wife and

> [s]he stretches [him]. She stretches [him] at least twice a day. She gets up and gets the kids off to school, comes back, stretches [him]. [They] get up, talk. If she goes to the grocery store, sometimes [he goes] with her. [He has] to get a nap during the day. [He] must have a nap because the body gets tired. And other than that, [he does

4

> not] know. [He] may be a hermit. [He doesn't] watch TV. [He does not] like all that junk on TV. [He] watch[es] Discovery, watch that crazy guy that - - the kangaroo guy that's always messing with the snakes.

(TR 421). He indicated that he has to nap for forty-five minutes to an hour each day because his body is tired. (TR 422). He stated that he does not do housework and only goes out of the house when his wife "makes him." (TR 421). He stated that his brother might visit him or he might visit his house in Columbiaville, which is approximately forty miles away. Id. He stated that he sometimes drives and did drive from Saginaw to the hearing in Flint. (TR 421-22). He stated that he drove because there was ice on the road. (TR 422).

### B. MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C. VOCATIONAL EXPERT'S TESTIMONY

#### 1. February 17, 2001, Hearing

Timothy Shaner, a vocational expert [VE], testified at the hearing. (TR 423-27). The VE categorized Plaintiff's past work as a machine operator as medium and unskilled with no changes. (TR 423). The ALJ asked the VE to assume a claimant with Plaintiff's age, education, and work experience and to further assume that the claimant's testimony was credible and that he suffers from the limitations and impairments he alleged. (TR 424). The VE testified that under such a hypothetical the claimant would not be able to return to his past relevant work. Id.

---

[2] See Subpart E, supra.

The ALJ presented another hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience possessed the residual functional capacity [RFC] to "perform sedentary work, but he'd require a sit/stand option - - no repetitive bending, twisting, or turning. No repetitive pushing, pulling, gripping, or grasping. No production line work. It would need to be simple repetitive work of a low-stress nature with limited contact with the public and co-workers." (TR 424). The VE testified in response that the following positions were available: visual inspector, 1,700 positions; security monitor, 1,500 positions; and clerical sorter with no "actual gripping or grasping requirements," 1,000 positions. (TR 424-25). As to the limited public contact, the VE testified that there are positions with "telephone contact only as opposed to face-to-face, and that would be a limitation of contact, such as information clerk," 1,700 positions; telephone answerer, 1,500 positions; and order clerk, 3,200 positions. (TR 425).

Plaintiff's counsel questioned the VE. (TR 425-27). The VE clarified that all jobs would have "limited contact including with co-workers and supervisors," however, "they're not team-type positions where that [sic] interaction is required." (TR 425). The VE went on to explain that

> there's no job really - - at least of an unskilled nature - - where there's not going to be the expectation that you can follow directions, do what the supervisor says. That just goes without saying. But there's no need in any of these positions for that to be ongoing, constant, regular activity. I mean there's a job that's so simple that, once you learn the job, you're expected to be able to do it without being constantly supervised or constantly team-working with other co-workers.

(TR 426). The VE agreed with Plaintiff's counsel that "in any job, you'd have situations where maybe there's new assignments [and] changes in procedures . . . [m]aybe not daily, but probably at least several times a week, you're interacting with those people who are above you." Id. The VE testified that "if a person just cannot be around others and cannot handle being around others, cannot accept supervision of any kind, and they just are absolutely useless because of that as far as - - the

6

distraction is so severe that they just can't function . . . then, . . . any job would be precluded." (TR 426-27). Further, if an individual is unable "to accept instructions and respond appropriately to criticism from supervisors," then all work would also be precluded. (TR 427). Additionally, "[i]f there's no useful ability to pay attention, it would preclude all work." Id.

### D.     ALJ'S CONCLUSIONS

#### 1.     February 26, 1998, Decision

After reviewing the testimony presented at the hearing and the medical evidence in the record, ALJ LaFalce found that "[t]he medical evidence establishes that the claimant has severe imparments of internal derangement of the left shoulder, internal derangement of the left knee and upper and lower back pain (with degenerative changes)," but he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. (TR 19, 25). ALJ LaFalce found Plaintiff's allegations regarding his limitations not totally credible. (TR 22-23, 25). He determined that Plaintiff had the RFC to perform a limited range of sedentary and light work. (TR 23-24, 26). Therefore, ALJ LaFalce concluded that Plaintiff is not eligible for DIB. (TR 26).

#### 2.     May 24, 2001, Decision

After reviewing the testimony presented at the hearing and the medical evidence in the record, ALJ Ransom found that "[t]he medical evidence establishes that the claimant has severe impairments of bilateral carpal tunnel syndrome, cervical and lumbar discopathies, status post rotator cuff tears, internal derangement of the left knee and major depression," but that he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4.

(TR 320, 328). The ALJ found Plaintiff's allegations regarding his limitations not totally credible. (TR 325-26, 328). He determined that Plaintiff had the RFC to perform a limited range of sedentary work. (TR 326, 328). Therefore, the ALJ concluded that Plaintiff is not eligible for DIB. (TR 329).

E.     ANALYSIS

Plaintiff advances two claims in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the Commissioner erred in posing a hypothetical to the VE that does not accurately reflect Plaintiff's limitations; and (2) the Commissioner erred in failing to comply with the mandates of SSR 00-4p, by establishing the validity of the VE.[3] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[4] The matter is now ready for decision.

1.     **Standard of Review**

The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if

---

[3] Plaintiff's Motion for Summary Judgment and Brief filed June 6, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-19.

[4] Defendant's Motion for Summary Judgment and Brief filed August 26, 2005 (hereinafter "Defendant's Brief"), at pages 13-23.

the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Improper Hypothetical

Plaintiff argues that the Commissioner erred as a matter of law by forming an inaccurate hypothetical that did not accurately describe Plaintiff's impairments.[5] Plaintiff relies on Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), to argue that the ALJ in the present case did not properly integrate Plaintiff's limitations; specifically, that the ALJ's hypothetical, which includes a limitation to "'performing only simple repetitive tasks in a low-stress work environment with limited contact with the public and coworkers' . . . is too limited to encompass the 'concrete consequences' of the deficiencies in concentration found by the ALJ."[6]

Further, Plaintiff argues that the ALJ's findings that Plaintiff suffered from "'moderate limitations with respect to concentration, persistence or pace' . . . is consistent with the Psychiatric Review Technique [PRTF] completed by a State Medical Examiner that Mr. Reece often suffered 'deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely

---

[5]Plaintiff's Brief at pages 7-8.

[6]Plaintiff's Brief at page 11 (citing TR 326, 328).

9

manner (in work settings or elsewhere).'"[7]  Plaintiff also argues that same is consistent with the opinions of Dr. Tava and Dr. Nagarkar.[8]

Recently, the Sixth Circuit has clarified what a hypothetical should include:

In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356.  In Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004).

Plaintiff relies upon several cases cited below, including the case of Smith v. Halter, 307 F.3d 377 (6th Cir. 2001), to argue that the ALJ failed to place adequate restrictions on him within the hypothetical.[9]  In Smith, the ALJ also found that the plaintiff "often" had difficulties concentrating on the PRTF that resulted in a failure to complete work in a timely manner. Id. at 379. That ALJ in Smith based his finding on the testimony of four physicians that found the plaintiff's concentration difficulties to be "minimal or negligible." Id.  Further, the ALJ in Smith rejected the opinion of the fifth physician who stated that the plaintiff could not work due to his "inability to concentrate." Id.  The court in Smith stated that the ALJ accurately characterized the plaintiff's limitations in that case, by "limiting him to jobs that are routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of heavy machinery." Id. at 378.  Also, the Smith court found that the ALJ properly evaluated the plaintiff's

---

[7]Plaintiff's Brief at pages 11-12 (citing TR 259, 325) (emphasis added by Plaintiff not included).

[8]Plaintiff's Brief at page 12 (citing TR 204-09, 295-97, 378-83, and 384-98).

[9]Plaintiff's Brief at pages 9-15.

10

mental impairments under Varley. Smith, 307 F.3d at 379. Therefore, the court found that because the ALJ incorporated both concentration difficulties and problems related to timely completion of tasks as a result, the ALJ's decision was supported by substantial evidence. Id. at 379-80.

More recently, one district court within the Eastern District of Michigan has interpreted Smith, stating that "the Sixth Circuit has [] held that an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment." Edwards v. Barnhart, 383 F.Supp.2d 920, 929 (E.D.Mich. 2005) (Hon. Friedman, B. A.).[10] However, the district court held that

> while finding that Plaintiff has a "moderate limitation in her ability to concentrate, persist and keep pace," the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more than *simple, routine, unskilled work*" (R. 18-19, 248). While close, these are *not sufficient*, and do not fully convey Plaintiff's limitations in concentration to the VE. See Keyser, No. 03-60078; c.f. Webb v. Commr of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004). Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of the assembly, packing, and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and

---

[10]The undersigned recognizes "district judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits." TMF Tool Co., Inc. v. Muller, 913 F.2d 1185, 1191 (7th Cir. 1990) (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir.1987) (emphasis in original)). See also Liebisch v. Sec'y of Health and Human Servs., 21 F.3d 428, 1994 WL 108957, *2 (6th Cir. 1994) ("District Court opinions have persuasive value only and are not binding as a matter of law.") (unpublished disposition; Table).

> pace. The ALJ's argument that Plaintiff's daily watching of television is not sufficient evidence on this record to conclude her concentration is not significantly impaired. Thus, the ALJ's hypothetical question is insufficient.

Id. at 930-31 (emphasis added).  Further, in Edwards, the district court found that "[u]nlike the Smith case, the present case does not include 'the testimony of four physicians who characterized [the Plaintiff's] concentration problems as minimal or negligible.' Indeed, Plaintiff's most recent GAF of 50-55 by Dr. Bogdanovic shows 'moderate difficulty in . . . occupational functioning.'" Id. at 930.

Even more recently, however, the district court for the Eastern District of Michigan has stated, "while the ALJ checked the 'often' box on the PRTF, his more specific and detailed assessment of Plaintiff's mental limitations noted a dearth of objective medical findings or treatment records that would support a finding of a major impairment in this area," and  interpreted

> Smith and the other pertinent precedents as dictating that the focus be on the ALJ's detailed assessment of a claimant's limitations, as opposed to the ALJ's broad characterization of the claimant's deficiencies on the five-point PRTF scale. To be sure, all of the ALJ's findings, including those summarized on a PRTF, must be harmonized and incorporated into the hypothetical questioning of the VE. Yet, a particular assessment on a PRTF does not mandate a rigid checklist of restrictions that must be included in this questioning. Rather, a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record.  Here, the Court finds that the ALJ properly carried out this function upon remand, and that his resulting decision should be affirmed as based upon substantial evidence.

Bohn-Morton v. Comm'r of Soc. Sec., 389 F.Supp.2d 804, 807 (E.D. Mich. 2005) (Hon. Rosen, G.E.).

However, additional case law from this district court suggests that more often than not, a simple and routine task limitation is insufficient to support a limitation of  "often" having difficulty in concentration, persistence, or pace for the purposes of establishing substantial evidence.

> Courts have found that hypotheticals limiting a worker to "unskilled work" have not been sufficient to accommodate certain psychological limitations. Newton v. Chater, 92 F.3d 688 (8th Cir. 1996), held that a reference merely to "unskilled sedentary work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies; see also McGuire v. Apfel, 1999 WL 426035, at *15 (D.Or. 1999). This Court in Bielat v. Comm'r of Soc. Sec., 267 F.Supp.2d 698 (E.D.Mich. 2003) (quoting Andrews v. Comm'r of Soc. Sec., No. 00-75522 (E.D.Mich. December 18, 2001) [sic]) and citing Thomczek v. Chater, 1996 WL 426247 (E.D.Mich. 1996), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in ability to concentrate or persist at tasks.

Eiseler v. Barnhart, 344 F.Supp.2d 1019, 1029 (E.D.Mich. 2004) (Hon. Fiekens, J.).

Further, in Bielat, 267 F.Supp.2d at 702, the district court stated

> [i]n general, a reference to "unskilled, sedentary work" is not sufficient to describe deficiencies in concentration. See Newton v. Chater, 92 F.3d 688 (8th Cir.1996) (holding that a reference to "simple jobs" was insufficient to constitute inclusion of the impairments or deficiencies in concentration noted by the ALJ); McGuire v. Apfel, 1999 WL 426035 at *15 (D.Or. 1999) (holding that "simple work" was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner). The Commissioner notes that unskilled work by definition involves little judgment to perform simple duties that can be learned on the job in a short period of time. See 20 C.F.R. § 404.1568(a)(2001).

Here, Plaintiff argues that his case is similar to Thomczek, Newton, McGuire, and Bielat.[11] Plaintiff distinguishes Smith, 307 F.3d at 380, arguing that the Sixth Circuit found that "'the ALJ's restriction against jobs with high quotas adequately addresses' his conclusions as to the claimant's limitations with regard to concentration and timeliness of completing tasks, [whereas] [n]o such restrictions were placed in the hypothetical in the present case."[12]  He acknowledges that the ALJ stated "no production line work" in the hypothetical, but argues that this restriction was "given to

---

[11]Plaintiff's Brief at pages 10, 12, and 15.

[12]Plaintiff's Brief at page 11.

13

accommodate physical impairments, specifically the bilateral carpal tunnel syndrome[,]" because the RFC reads "no repetitive pushing or pulling, gripping or grasping, with no production line work."[13] However, as Defendant points out, "[w]hether or not the limitation was due to his manipulation or concentration difficulties, the ALJ's hypothetical question nevertheless included [the restriction of no production line] and, as a result, Plaintiff was restricted from such work."[14]

Defendant is correct that the hypothetical included the limitation and that it is essentially irrelevant as to where the limitation was listed in relation to the other limitations. However, the limitation is not as encompassing as that in Smith. "[N]o production line work" is not the same as no "high quotas." Smith, 307 F.3d at 378. Under Smith "a case-by-case determination is required, under which the ALJ must translate the broad PRTF classifications into a set of specific limitations that are properly rooted in the administrative record." Bohn-Morton, 389 F.Supp.2d at 807.

In the present case, the ALJ found that Plaintiff was capable of positions including, visual inspector, security monitor, information clerk, telephone answerer, and order checker. (TR 327). It bears repeating that the district court in Edwards recognized that

> Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence and pace for this Court to have any idea as to the number of the assembly, packing, and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace.

Edwards, 383 F.Supp.2d at 929. Further, in Bielat, the district court noted that

---

[13] Plaintiff's Brief at page 11 (citing 326, 328).

[14] Defendant's Brief at page 17.

14

> a job may fit that description [of simple, unskilled sedentary work] and still require the ability to concentrate. Thus Bielat's ability to "learn, understand, remember, and perform simple, rote tasks on a sustained basis" is not necessarily enough to perform the sorts of jobs mentioned by the VE. For example, monitoring security cameras, a job the VE said could be performed by someone with the limitations in the hypothetical question, is unskilled (as it requires little judgment and may be learned in a short period of time), but if someone in that job could not concentrate and pay attention to the monitors, his performance would almost certainly be deficient.

Bielat, 267 F.Supp.2d at 702.

Further, the ALJ stated that Dr. Tava's opinion was taken into account as it relates to the RFC. (TR 326). Plaintiff argues that Dr. Tava's limitations are consistent with his counsel's own questioning of the VE.[15] The VE testified that under counsel's additional hypothetical restrictions all work would be precluded.[16] (TR 426-27).

Defendant argues that Plaintiff is incorrect[17] and points out that

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, available at 1996 WL 374184, *4. However, the problem appears to be a question of how the RFC and hypothetical work together. In Webb, 368 F.3d at 632-33, the Court explained:

> while the [residual functional capacity] should focus on Howard's abilities or, in other words, what Howard can and cannot do, the hypothetical question should focus on Howard's overall state including Howard's mental and physical maladies. . . The vocational expert's testimony is directed solely to whether, given a claimant's age,

---

[15]Plaintiff's Brief at pages 16-17.

[16]Plaintiff's Brief at page 16.

[17]Defendant's Brief at pages 13-14.

15

experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies.

In the present case, a court ordered mental status examination discussed by the ALJ, (TR 324), was consistent with the deficiencies of concentration, persistence, and pace that the ALJ also noted. (TR 325).[18] Additionally, as Plaintiff points out, not only Dr. Tava noted these findings, but the state agency examiner also found that Plaintiff "often" had "[d]eficiencies of [c]oncentration, [p]ersistence, or [p]ace [r]esulting in [f]ailure to [c]omplete [t]asks in a [t]imely [m]anner." (TR 259). However, the ALJ failed to properly integrate same into the hypothetical under Smith and its progeny when he limited Plaintiff to "[n]o production line work," and "simple repetitive work of a low-stress nature." (TR 424).

### b.     SSR 00-4p

Plaintiff argues that the ALJ failed to comply with the mandates of SSR 00-4p by failing to establish the validity of the VE.[19]   SSR 00-4p specifically provides:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

---

[18] It is noted that although Dr. Tava found that Plaintiff was markedly limited in this respect, the ALJ only noted moderate limitations. (TR 325).

[19] Plaintiff's Brief at pages 18-19.

16

Plaintiff alleges that although the ALJ stated in his decision that "the [VE] testified that the evidence he provided does not conflict with the Dictionary of Occupational Titles (DOT) or any of its companion publications."[20]

> There are few decisions interpreting SSR 00-4p. However, those which have considered an ALJ's obligations under that ruling suggest that an ALJ's failure to carry its burden at this step is reversible error. See Anschutz v. Barnhart, 212 F.Supp.2d 1077, 1085-1086 (S.D.Iowa 2002)(Commissioner failed to meet burden of proving that jobs existed, where VE did not refer to the DOT and, therefore, did not identify specific jobs that could be performed.). Steward v. Barnhart, 44 Fed. Appx. 151 (9th Cir.2002)(unpublished) (Reversible error for ALJ to rely upon jobs listed by VE that required transferable skills, where the ALJ found that the claimant did not have transferable skills.); Gallant v. Massanari, 2001 WL 912406 (D.Me.2001)(Reversible error for ALJ to rely upon jobs erroneously listed by VE that were inconsistent with Plaintiff's RFC.).

Teverbaugh v. Comm'r of Soc. Sec., 258 F.Supp.2d 702, 706 (E.D.Mich. 2003). However,

> [i]n Conn v. Secretary of Health & Human Services, 51 F.3d 607, 610 (6th Cir. 1995), the court held that the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications.

Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003). In any event, the undersigned finds that any potential conflicts in the present case result in harmless error because as Defendant points out, Plaintiff points to absolutely no conflict between the VE's testimony and the DOT.[21]

---

[20]Plaintiff's Brief at page 18 (citing TR 327).

[21]Defendant's Brief at pages 20-21. See Rutherford v. Barnhart, 399 F.3d 546, 556-57 (3rd Cir. 2005) (declining to reverse for lack of compliance with SSR 00-4p where the VE provided only examples of jobs and not an exhaustive list, where inconsistencies were not present as to each of the jobs identified by the VE, and where the existing inconsistencies were not egregious enough). Accordingly, he has waived the issue for review. McPherson, 125 F.3d at 995-96 ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones'") (citations omitted). Defendant's Brief at page 20.

### 2. Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because he failed to present a hypothetical to the VE that accurately described Plaintiff's ability to maintain concentration persistence, or pace. This case should be remanded to allow the ALJ to properly include the limitations regarding difficulties with concentration, persistence, or pace that affect Plaintiff's ability to complete tasks in a timely manner. There still may be positions with such restrictions available; therefore, a remand for benefits would be premature.

### III. CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

### IV. REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28

U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

**Dated:**   January 20, 2006             S/Wallace Capel, Jr.
                                          **WALLACE CAPEL, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet Parker, Assistant United States Attorney, 101 First Street, Suite 200, Flint, Michigan 48708, and Mikel E. Lupisella, 1121 N. Michigan Avenue, Saginaw, Michigan 48602-5369.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606  .

              s/James P. Peltier
              United States District Court
              Flint, Michigan 48502
              810-341-7850
              E-mail: pete_peltier@mied.uscourts.gov